HENRY A. FOWLER, ADMINISTRATOR OF THE ESTATE OF
MARIA TOMASZEWSKA, DECEASED,

*v.*

STATE OF ILLINOIS.

*Opinion filed December 3, 1910.*

1. NON-LIABILITY OF STATE—*what does not constitute claim against the State.* In this claim, complainant's intestate was run over in Lincoln Park by an automobile, which had been commandered by one of the park policemen. *Held,* that no recovery could be had.

2. RESPONDEAT SUPERIOR—*doctrine of not applicable to State.* Even though the cause of the accident, which resulted in the death of claimant's intestate, was the negligence of the park policeman, still there is no liability on the part of the State therefor in view of the well established rule, that the State is not liable for the torts of its officers, agents, servants or employees.

George McMahon, for Claimant.

W. H. Stead, Attorney General, for State.

The record in this case shows that about six o'clock on the afternoon of Sunday, June 28, 1908, claimant's intestate, Maria Tomaszewska, and her three daughters were in the vicinity of the Grant monument in Lincoln Park, in the city of Chicago, and were crossing one of the park boulevards at this point, when the said intestate was knocked down and run over by a passing automobile, receiving injuries from which she died a few minutes after the accident. The testimony further shows that a few minutes before the accident occurred the automobile in question had been boarded by a park policeman, who was noticed to speak a few words to the driver; that the driver thereupon increased the speed of the automobile; that the policeman rode on the foot-board of the car and was in that position when the car struck claimant's intestate. It also appears that ahead of the automobile were two motor cycles connected with a rope or wire, tandem fashion, the one in the rear being towed by the former, the rear cycle being out of repair. There is no evi-

dence as to the identity of the driver of the automobile and no testimony as to what was said by the policeman to the driver, but it is sought to be inferred that the policeman being desirous of overtaking these motor cycles had boarded the automobile, told the driver to increase his speed and that while running at an unlawful rate of speed, and in a reckless manner, the said intestate was struck and killed. The State's liability to respond in damages in this case is based upon the assumption; that the driver was under the direction of the policeman; that the policeman had been appointed by the Lincoln Park Commissioners, and that the park being a function of the State government, the State is liable for the wrongful act of the park policeman. The evidence further shows that the location of the accident was a dangerous one, the same being at the intersection of four roads, and there is no evidence as to whether the intestate was, at the time, in the exercise of due care and caution for her own safety. There is much discrepancy in the evidence as to the rate of speed at which the automobile was being driven. Three witnesses testify on this point. One James W. Twohig, who himself had been the owner of an automobile for a year, testified that in his judgment the automobile that struck the intestate was moving at the rate of twenty-five miles per hour. One Samuel Lehman, who freely admits that he is not familiar with the speed of automobiles, gives his opinion that the speed was seventy or eighty miles an hour. Dr. A. H. Brumbach, a professor in the College of Physicians and Surgeons, who was driving by in his own automobile at the time of the accident and who got out of his car to render medical assistance to the intestate, testified that in his judgment the automobile which struck the intestate was moving at the rate of only fifteen miles an hour. Dr. Brumbach had been operating a car for seven years. All witnesses testify that no warning was given by the oncoming automobile as far as they heard.

It is hardly necessary in this case to discuss the general facts, for the reason that even if the evidence showed (which at best it only does by general inference), that the injury resulted from the wrongful or negligent act or acts of the policeman, there is no liability on the State therefor, in view of the well established rule that the State is not liable for the torts of its agents, servants or employees.

In *State Bank of Chicago, Administrator, etc.,* v. *State,* 1 Court of Claims Report, page 158, claimant's intestate, who was rightfully in Jackson Park and enjoying the same as a public park, was killed by the alleged unskillful handling of explosives in demolishing the World's Fair buildings by a wrecking company which had contracted with the Park Commissioners to dismantle said buildings. In that case this Court, on page 164, said:

"Public or State officers with only certain powers and duties enjoined upon them by the statutes do not come within the doctrine of *respondeat superior.*" Applying this rule, the South Park Commissioners, being merely appointive officers, with certain statutory powers, are mere assistants to the State in the exercise of its functions, are created for the purpose of aiding and assisting the sovereign power of the State in carrying on the functions of government, and they are not liable for the negligence or tortious acts of its servants. Where municipalities are created and instituted by general law, there can be no liability for an action for damages, occasioned by the negligent acts of its servants. *Waltham* v. *Kemper,* 55 Ill., 346. It has been judicially decided that the Board of South Park Commissioners are not liable in their corporate capacity. How then, can it be claimed that the State is liable for the acts of the commissioners? In this case the remedy is clearly against Mr. Kniffler, who fired the blast, or against the Salvage Company, in whose employ Mr. Kniffler was acting as mechanical engineer."

In *Johnson* v. *State,* 1 Court of Claims Reports, page 208, where an employee of the Board of Park Commissioners of West Chicago, in using a hose reel to water the grass, tripped up a bicyclist who was thrown to the ground and injured, this Court said: "The demurrer raises the question whether the State is responsible to the claimant for the wrongful or negligent acts of its subordinate officers. This question has been so frequently decided and the authorities are so numerous, that we deem it only necessary to cite them. (Court then cites *Schmidt* v. *State* and *Ross* v. *State.*) In these cases the rule has been well settled that a state could not be held liable for the wrongful or negligent conduct of its officers. The principle is so well established by authority as to admit of no doubt."

In *Harper* v. *State,* 1 Court of Claims, page 322, this Court said: "It is contended by claimant that the said Board of Park Commissioners, through its employees, was guilty of negligence in not providing suitable signs and notices, warning people of the vicious tendencies of the zebras in question, and that as said board and its employees were officers and agents of the State, the State is therefore liable for said injuries. The general rule of law is, that the principal is liable for the negligent act of his servants, in the course or scope of his employment upon the application of the principle of *respondeat superior;* yet a distinction exists as to municipal corporations, such as counties, townships, school districts, road districts, drainage districts and public park districts. To these our Courts have uniformly held that the principle of *respondeat superior* does not apply."

"The State, however, is a sovereignty, and the exception which applies to the above mentioned corporations with much greater force and uniformity applies to the State, and it is invariably held that the State is not responsible for the misfeasance, wrongs or negligence or omissions of duty of subordinate officers

or agents, for it does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs.    That would involve it in all its operations, in embarrassments, difficulties and losses, which would be subversive of the public interest.''

In *Hollenbeck, administrator,* v. *Winnebago County,* 95 Ill., 148, 162, the Court said: ''No reason is perceived why a county should be held to respond in damages for the negligence of its officers.    *   *   *   In fact, the powers and duties of counties bear such a due analogy to the governmental functions of the State at large, that as well might the State be held responsible for the negligent acts of its officers as counties.''

It is needless to pursue this line of authorities further.    In the case at bar, it is not clear that the deceased was in the exercise of due care and caution for her own safety; it is not clear that the policeman was directing the driver of the car in his movements; it is not clear that the car was being driven in a reckless manner or at an unlawful rate of speed; it is not clear that the failure of the driver of the car to blow his horn and give warning was the fault of the policeman; it is not clear that the death of the deceased was the proximate result of the negligence of the policeman. But, if for the sake of argument, it be admitted that all of these propositions have been clearly proven, still the liability attaches to the policeman individually, and by no process of legal reasoning does it attach to the State of Illinois.    The claim is therefore rejected.